## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JULIE FREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-cv-911-R |
| | ) | |
| COMPANION LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### AMENDED COMPLAINT

Plaintiff, Julie Frey (hereinafter "Plaintiff"), for her claims against Defendant Companion Life Insurance Company, (hereinafter "Companion") states and alleges as follows:

### STATEMENT OF FACTS

1.      Plaintiff is an Oklahoma resident who lives in Oklahoma County.

2.      Defendant Companion is a health insurance company that is incorporated in South Carolina and is registered to engage in the business of insurance in the State of Oklahoma.

3.      On or about January 1, 2014, certain provisions of the Patient Protection and Affordable Care Act (hereinafter the "ACA") took effect, prohibiting health insurance companies from denying insureds' claims based on a pre-existing medical condition pursuant to its "Guaranteed availability to coverage" provision. 42 U.S.C. § 300gg-1(a).

4.      On or about December 13, 2014, Plaintiff used an online search engine to obtain an individual healthcare insurance policy for herself and her family, in conformance with the ACA.

5.      Apparently, an online search results in businesses being made aware of potential customers, because on or about December 13, 2014, Plaintiff was solicited via telephone by a representative of Companion, offering for purchase an individual Major Medical Insurance policy (hereafter "Policy") that was understood and represented as being compliant with the coverage mandate of the ACA and did not contain an exclusion of claims based on pre-existing medical conditions.

6.      Plaintiff requested an individual healthcare insurance policy for herself and her family, and the Companion representative offered her the Policy without advising her of the true nature and extent of the coverage. Specifically, the Companion representative did not advise her that it was a group short term limited duration policy, which contained exclusions not permissible by the ACA.

7.      A premium payment and application fee was immediately requested by the Companion representative and paid by Plaintiff. Upon payment, the Companion representative assured Plaintiff she would receive information regarding her new individual Policy.

8.      Companion accepted coverage, and in lieu of providing any documents regarding her coverage or type of policy, Plaintiff received an e-mail from Health Insurance Innovations (hereinafter "HII") on December 16, 2014 that stated her Policy would go into effect on December 13, 2014. That e-mail contained a link with login

information that Plaintiff could use to set up an account and access the Certificate of Insurance Providing Short Term Major Medical Insurance (hereinafter the "Certificate"), among other documents.

9.     Despite Companion's representation that individual healthcare coverage complaint with the ACA was being provided, said coverage was not provided by Companion, nor was Plaintiff informed before payment that she would not receive an individual policy. Instead, Companion placed Plaintiff in a group policy and provided Plaintiff with Companion's Certificate of Insurance rather than a policy contract was promised. Companion switched Plaintiff to the status as certificate holder in a group Short Term Major Medical Insurance, identified as "Group Policy No. HIIMSG100", which named Med-Sense Guaranteed Association (hereinafter "Med-Sense") as the "Policyholder" rather than Plaintiff and Health Insurance Innovations as the "Administrator" of the Policy. Companion never provided the promised individual Policy to Plaintiff.

10.     The Med-Sense Policy excluded, among other things, "Pre-existing Conditions", defined as "[c]harges resulting directly or indirectly from a condition for which a Covered Person receiving medical treatment, diagnosis, care or advice within the six-month period immediately preceding such person's Effective Date are excluded for the first 12 months of coverage hereunder."

11.     Further, the Med-Sense Policy purports to exclude coverage for a myriad of common medical conditions, all of which expenses are excluded for the duration of the Policy, creating illusory health coverage by Companion.

3

12.    An Endorsement with a stated effective date of December 13, 2014 modified the definition of "Pre-existing Conditions" to ""[c]harges resulting directly or indirectly from a condition for which a Covered Person receiving medical treatment, diagnosis, care or advice within the sixty-month period immediately preceding such person's Effective Date are excluded for the first 12 months of coverage hereunder. . . . [and] [p]re-existing conditions includes conditions that produced any symptoms which would have caused a reasonable person to seek diagnosis, care or treatment within the sixty-month period immediately prior to the coverage effective date."

13.    The Endorsement further purported to modify the Policy's Schedule of Benefits. Specifically, the modification placed a cap of $1,500 for treatment of kidney stones. Upon information and belief, Plaintiff contends that Companion and its representatives and administrators engaged in fraudulent conduct through these improper efforts to change coverage terms after formation of the insuring agreement and in post-claim underwriting.

14.    On or about January 5, 2015, in reliance on the promises made by Defendant, Plaintiff canceled her previous health insurance plan.

15.     On or about March 17, 2015, Plaintiff sought treatment for kidney stones at St. Anthony Hospital in Oklahoma City.

16.    Plaintiff received bills for medical treatment from St. Anthony Hospital, Western Oaks Anesthesia Associates, Inc., SSM Health, Diagnostic Laboratory of Oklahoma, L.L.C. and Oklahoma Radiology Group, PC, and Choctaw Family Medicine and Aesthetics.

4

17.     During April 2015 and/or May 2015, Plaintiff submitted a claim, (hereinafter the "Claim") to Defendant's representative, Allied National ("Allied"), (upon information and belief, Defendant's third party administrator), for payment of medical bills and expenses relating to the kidney stone treatment received by Plaintiff.

18.     For ten months, Companion failed to accept or deny Plaintiff's Claim. Rather, it continued to ask for additional information.

19.     Over the next ten months, Plaintiff contacted Companion's representative, Allied once a month, each time following Plaintiff's receipt of medical bills relating to her Claim. Allied informed Plaintiff that it needed additional information, but never specified what information they were seeking from Plaintiff's healthcare providers or pharmacies. Upon learning what information Allied sought from her, Plaintiff informed it on each of the ten telephone conversations that Plaintiff already provided the requested information.

20.     On one particular occasion, Plaintiff asked Allied about a pharmacy bill, which Plaintiff believes was received from Walmart pharmacy. Allied informed Plaintiff it had not yet received information from Walmart. Plaintiff then contacted Walmart pharmacy to request that information be sent to Allied. A Walmart pharmacy representative informed Plaintiff that Allied owed payment to Walmart pharmacy, and it would not release the records until payment was made.

21.     Allied began sending Plaintiff a series of Explanation of Benefits (hereinafter "EOB"), each one stating that pre-existing conditions were excluded from

coverage, contrary to the "Guaranteed availability of coverage" provision of the ACA. 42 U.S.C. § 300gg-1(a).

22.     Further, Allied mischaracterized Plaintiff's acute kidney stone illness as a pre-existing medical condition. When Plaintiff sought treatment for newly formed kidney stones in 2015, it was an acute medical condition The Policy does not exclude kidney stone treatment or acute medical conditions.

23.     On or about February 11, 2016, Companion, through its agent Allied, sent Plaintiff a letter finally denying Plaintiff's Claim, approximately ten months after Plaintiff submitted the Claim.

## FIRST CAUSE OF ACTION – BREACH OF CONTRACT

24.     Plaintiff adopts and incorporates by reference paragraphs 1 through 16 above as if fully pled herein, and for further claims against the Defendant alleges as follows:

25.     The Policy and oral and implied agreements referenced herein constitute a valid and enforceable contract between Plaintiff and Companion.

26.     At all times material hereto, the Policy was in full force and effect.

27.     Plaintiff has fully performed and satisfied all the terms and conditions of the Policy.

28.     Companion breached and continues to breach the requested and promised ACA complaint Policy by denying coverage of benefits, all in violation of the ACA. Defendant has also failed to provide the requested and promised insurance coverage.

29.     Companion also breached and continues to breach the above referenced Policy by mischaracterizing Plaintiff's kidney stones as a pre-existing medical condition rather than as an acute medical condition.

30.     As a result of Companion's breach, Plaintiff has suffered and continues to suffer damages including, but not limited to, the non-payment of Policy benefits due and payable by Plaintiff for the charges for kidney stone treatment and other benefits under the Policy, and in the amount of the difference between the amount of covered kidney stone treatments and the amounts paid or not paid by Companion.

## SECOND CAUSE OF ACTION – BAD FAITH

31.     Plaintiff repeats and re-alleges the previous paragraphs as if fully set forth herein.

32.     Companion wrongfully failed and refused to promptly pay policy benefits, delayed payment of benefits, and denied coverage of benefits of the Policy in violation of the ACA.

33.     As a matter of routine business practice in handling of the claims of Plaintiff, Companion knowingly and intentionally breached its duty to deal fairly and act in good faith toward Plaintiff by:

a.      baiting Plaintiff with the promise of coverage of an ACA compliant policy, enticing Plaintiff through its agents and representatives to immediately tender premium and, without informing Plaintiff that the insurance actually provided was not ACA compliant, switching Plaintiff to a purported group short term limited duration insurance product without informing Plaintiff that such

product was not the individual ACA compliant Policy promised; and by failing and refusing to promptly pay and honor policy benefits due and owing on behalf of Plaintiff at a time when Companion knew Plaintiff was promised and led to believe she was entitled to those benefits;

b.      failing to diligently or properly investigate  and communicate its claims decision to Plaintiff, such decision not being communicated to Plaintiff until February 2016, ten months after the Claim was made;

c.      withholding payment of the benefits due knowing that such claims for those benefits were valid and mandated by the ACA;

d.      failing or refusing to promptly pay all policy benefits due and owing for reasons contrary to the ACA;

e.      failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under the Policy, including Plaintiff's claims;

f.      forcing Plaintiff to retain counsel in order to secure benefits Companion knew were payable;

g.      failing to properly perform audit and evaluate the investigation of Plaintiff's Claim that was performed; and

h.      denying payment of policy benefits,

all in violation of the ACA and of the covenant of good faith and fair dealing, and resulting in financial gain to Companion.

34.     The foregoing improper and unlawful conduct of Companion including, but not limited to, its underwriting and claims handling policies and procedures were done to substantially reduce the amount of benefits paid to its insureds, including but not limited to the Plaintiff, and consequently to significantly increase its profitability and wrongfully benefitting Companion by misrepresenting to Plaintiff that she would be receiving an individual healthcare policy and the protections and coverages afforded by the ACA.

35.     Plaintiff has suffered the loss of the Policy coverage, anxiety, frustration, mental and emotional distress and other incidental and consequential damages, financial hardship, attorney expenses and other incidental damages, as a proximate result of Companion's breach of the implied covenant of good faith and fair dealing.

## THIRD CAUSE OF ACTION – FRAUD

36.     Plaintiff repeats and re-alleges the previous paragraphs as if fully set forth herein.

37.     Companion represented, in its Policy language, that it would pay for the charges due under the kidney stone treatment benefits of the Policy.

38.     The representations made by Companion were with an understanding and intent that Plaintiff would rely on Companion to her detriment.

39.     The representations were false.

40.     Companion intended for Plaintiff to rely on Companion's representations as an inducement for Plaintiff to refrain from taking action to seek the full benefits that Plaintiff was due under the terms of the Policy and to refrain from seeking recovery of funds wrongfully withheld by Companion when it denied Plaintiff's Claim based on a

pre-existing condition, contrary both to the ACA and the standard definition of a pre-existing condition.

41.     Companion also represented, through its agent in a telephone solicitation made to Plaintiff on December 13, 2014, that Plaintiff would be receiving individual healthcare coverage that would not exclude coverage for pre-existing medical conditions.

42.     Companion and its representatives did not inform Plaintiff that she would be a certificate holder before accepting premium payment;

43.     Companion and its representatives did not inform Plaintiff that the actual policy was issued to Med-Sense before accepting Plaintiff's premium.

44.     Companion and its representatives did not inform Plaintiff that Med-Sense or another contrived policyholder was the actual insured, that such contrived insured was a policyholder for longer than a year, and that such policy was actually not a qualified short term limited duration policy. Companion and its representatives operated a scheme designed to mischaracterize and misapply short term limited duration coverage for an improper and unlawful purpose to avoid incorporating the requirements of the ACA into an insurance product marketed to Plaintiff contrary to the spirit and letter of the ACA.

45.     These representations were made with the understanding and intent that Plaintiff rely on Companion providing ACA compliant individual healthcare coverage to her detriment.

46.     Such representations were false.

47.     Companion intended for Plaintiff to rely on Companion's representations and supplied her instead with contrived short term limited benefit group healthcare

coverage in an attempt to severely restrict the amount of coverage Plaintiff would receive for medical treatment of any kind.

48.     As a direct and proximate result of Companion's omissions, wrongful conduct and false representations, Plaintiff has suffered and continues to suffer the loss of the Policy coverage, anxiety, frustration, mental and emotional distress, financial hardship, attorney expenses and other incidental and consequential damages.

49.     As a direct and proximate result of the foregoing conduct by Companion, Plaintiff has been damaged in an amount exceeding Seventy Five Thousand Dollars ($75,000.00), the exact amount to be determined at trial, interest thereon at the highest legal rate, court costs, and attorneys' fees;

## PUNITIVE DAMAGES

50.     Companion has acted intentionally and with malice toward Plaintiff and others and/or has been guilty of reckless disregard of the health, safety and welfare of Plaintiff and others, and engaged in detrimental conduct to its insureds, entitling Plaintiff to punitive damages.

51.     The amount of punitive damages sought to be recovered is in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code.

52.     Plaintiff further alleges Companion benefitted from increased financial benefits and ill-gotten gains as a direct result of the intentional and wrongful conduct described above, which resulted in further damage to the Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, premises considered, the Plaintiff prays for judgment against Companion for:

a.      Actual and punitive damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs, and all interest allowed by law;

b.      Payment of all contractual benefits for all coverages afforded to Plaintiff under the Policy for Plaintiff's Claim, together with interest on all amounts due;

c.      Disgorgement of the increased financial benefits derived by Companion as a direct result of Defendant's wrongful, intentional, willful, malicious and reckless conduct;

d.      Compensation for Plaintiff's anxiety, frustration, and mental and emotional distress;

e.      Attorneys' fees, costs and interest, including pre-judgment and post-judgment interest.

ATTORNEY LIEN CLAIMED

JURY TRIAL DEMANDED

Respectfully Submitted,


*s/Chantel P. James*
Richard M. Healy, OBA No. 4030
Michael C. Felty, OBA No. 10804
Chantel P. James, OBA No. 32431
Lytle, Soulé & Curlee, P.C.
119 N. Robinson Ave., Suite 1200
Oklahoma City, OK 73102
Telephone: 405.235.7471
Facsimile: 405.232.3852
healy@lytlesoule.com
felty@lytlesoule.com
james@lytlesoule.com

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that on November 7th, 2016, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Bradley K. Donnell
Andrew J. Morris
McAfee & Taft, PC
Tenth Floor, Two Leadership Square
211 N. Robinson Ave.
Oklahoma City, OK 73102
Tel: 405.235.9621
Fax: 405.235.0439
brad.donnell@mcafeetaft.com
andrew.morris@mcafeetaft.com
*Attorneys for Defendant*

s/ *Chantel P. James*
Chantel P. James